Deaderick, J.,
deli ered the opinion of the Court.
General Joseph Miller, of Sumner county, made his last will and testament on the 15th of December, 1856, and died on the 20th of November, 1858.
Susannah Miller, wife of testator, was by the will appointed executrix, and James Alexander, the complainant in this cause, and son-in-law of testator, was appointed executor.
In November, 1863, Mrs. Miller died, leaving Alexander surviving executor.
At the time of the execution of the will, and the death of the testator, he was the owner of a valuable estate, consisting of real estate and slaves, and *71 other personal property; and he left as his devisees, legatees, and heirs at law, his widow, one child Nancy J. Alexander the wife of complainant, and the following named grand-children:
Susan Miller Seawall and R. M. Miller, who are the children of Andrew K. Miller, a son who died in February, 1853; Joseph Miller, A. W. Miller, R. G. Miller, and Thomas Miller, children of the said Nancy Jane by a former husband, and Susie and Jennie Alexander, her children by complainant, her last husband; J. K. Miller, son of R. G. Miller, a son of testator, who died in April 1843; J. M. Miller, A. K. Miller, Susan Miller, Nancy Jane Miller, and Polly W. Miller, children of Robert Miller, son of testator, who died 30th of August, 1850. Thus at the date of the will and at the time of the testator’s death, he left surviving him his widow, one daughter Nancy J. Alexander, and fourteen grandchildren.
Since testator’s death, his widow has departed this life, as before stated, and on the 23d March, 1870, and since the institution of this suit, his only surviving child, Nancy J. Alexander, also departed this life, leaving her husband and the children hereinbefore named surviving her.
After the testator had made his will he purchased other lands in Sumner county.
The bill was filed in the Chancery Court of Sumner county, December, 1865, by the surviving executor, asking for a construction of the will; that the rights of the parties thereunder might be ■ declared; that *72 advancements made by testator might be accounted for; the lands not devised sold; and the estate settled under the direction cf the Chancellor.
Several questions of interest are presented in argument and arise upon the record. The first clause in the will is as follows: “ I will and direct that all my just debts be paid by my executor hereinafter to be named, out of any moneys of which I may die possessed, or may first come to his hands or possession.”
The next clause gives, devises and bequeaths to his wife Susannah Miller, for and during her natural life, all the real and personal estate of every description of which the testator may die seized and possessed, not therein otherwise disposed of, for her natural life, with the privilege of the revenues, profits, and increase arising therefrom.
After various specific devises of real estate and bequests of personalty, all of which were to take effect on the termination of the life estate of his widow, by the 8th clause of his will the testator adds:
“At the death of my wife Susannah, I will, and direct that all my then remaining personal property not herein disposed of, be equally divided between my grandchildren and the heirs and representatives of those who may have died leaving issue, share and share alike.”
In view of these several provisions of the will, together with the fact that no specific disposition is made by the testator of the lands acquired after the execution of the will, or of the one hundred acre ridge tract and town lot owned by him at the time of its execution, *73 it is earnestly insisted that if the .money on hand and that which may first come into the executor’s hands, which constitute the fund set apart for the payment of debts, are inadequate to that object, neither the real nor personal estate devised and bequeathed for life to the widow, and at the termination of her life estate otherwise disposed of by the will, can be applied to the satisfaction of testator’s debts until the undevised realty shall have been first so applied.
It is a well settled rule that the personal estate of a testator is primarily liable for the payment of debts, unless provision be made in the will for their payment out of some other fund. 2 Red., 865, 866.
The debts were in fact paid by the executor out of the money on hand and the proceeds of the sale of the personal estate of the testator.
It is maintained in argument that the Grim tract of two hundred and thirty-four acres, and the forty acre tract purchased by testator after the making of his will, as well as the one hundred acre ridge tract and the town lot which he owned at the time, or at least the three tracts of land, passed by the will.
The ridge tract, it is argued, was considered by the testator as a part of the “home tract,” and passed with it to Mrs. Alexander.
The testimony shows that this tract is distinct from the home place, and there is no evidence in the record to show that it was regarded by testator as constituting a part of it: indeed the fact that it is spoken of throughout the record by the distinctive *74 appellation of the “ridge tract,” negatives such an inference.
The Grim tract, of which the forty acre tract is claimed to be a part, it is argued passed to Mrs. Alexander, under the devise to her of all the interest which the testator had purchased from the heirs of Woods S. Miller in the tract of land whereon James Alexander lived except the part devised to Joseph K. Miller.
It is not pretended that the Grim tract is any part of the Woods Miller tract, but it is alleged and proved that the testator had bought the Grim tract to exchange it with one of the heirs of Woods S. Miller for his interest in said tract. No contract had been made between the parties, nor had the terms of exchange been agreed on.
We do not think that, upon any recognized principle of law, or rule of construction, we could hold that the unexecuted purpose of the testator to exchange the Grim tract of land for an interest in the Woods Miller tract, can be held as authorizing us to say that, under the specific devise of an interest which the testator had purchased in the Woods Miller tract, the Grim tract passed to Mrs. Alexander.
There is no mention of either of these tracts, nor of the town lot, made in the will, nor any language which can be construed as disposing of them.
It is clear, by sec. 2195 of the Code, that the real estate acquired by testator after making his will, was disposed of by the will to his widow as fully and completely, as that which he owned at the time *75 of its execution, no contrary intention appearing by either tbe words or context of the will.
The testator did not die intestate as to these several parcels of land not mentioned in. the will, so far as the life estate of the widow therein is concerned. The terms of the devise to her, in reference to the realty, are that she shall have for life all that he may die seized and possessed of.-
There is no disposition in the will of any other estate in said after acquired lands. While there are no words in the will to indicate any intention that the reversion in said lands should pass, such intention is negatived by its contents.
There are several devises of life estates in other lands, and remainders therein, disposed of by the will, but no terms or provisions from which we can deduce a purpose on the part of the testator that the reversionary interests in the after acquired lands, and lands not specifically disposed -of, should go to anyone of the numerous objects of his bounty mentioned in the will. We therefore hold that this interest remained in the testator undisposed of, and at his death it descended to his heirs, and upon the falling in of the life estate vested them with a complete legal title to said lands. Upon the lands purchased by the testator after the making of his will, a portion of the purchase money remained due at the time of his death, which, together with the other debts of the testator, was paid out of the personal estate.
Generally the personal estate is primarily liable for the payment of debts, and will be first applied *76 for that purpose until exhausted, unless there is some direction in the will that payment shall be made out of a different fund specially set apart and provided for that purpose: 2 Ned. on Wills, 865; 2 Wms. on Exr., 1531.
The only directions found in the will in reference to the payment of debts are those contained in the first clause, in which the testator directs his debts to be paid by his executor out of any money on hand at his death, or such as may first come to his hands or possession.
Under this clause, the money on hand at the testator’s death, if sufficient for the purpose, would be first applicable to the payment of his debts.
By the second clause of the will, all the testator’s property, real and personal, is given to his widow for life.'
The reversionary - interest in the lands not specifically disposed of by his will, after the termination of the widow’s life estate, being the only property, real or personal, of which testator died intestate, the question is presented, whether the personal property which is bequeathed, or the descended lands, should have been applied to the satisfaction of the testator’s debts, after exhausting the money on hand.
Money, although the representative of property, is not the synonym of that term. The direction in the will that money shall be used in the payment of debts is not a direction that other property than money shall be used for that purpose: nor is the bequest of the personal property contained in the eighth clause *77 of tbe will a residuary legacy, but a legacy absolute in tbe same property in which the widow took a life estate.
There is no authority in the will to the executor to sell real estate, for the payment of debts or for any other purpose; and without such pow'er conferred on him, the executor could not sell any portion of it, nor apply it to the payment of the testator’s debts.
While, therefore, the general rule is that the personal estate is primarily liable to the payment of the debts of- a deceased person; if they are exonerated from such primary liability by the express terms of a will, or by implication, a different rule would apply.
The policy of the law is to give effect to all the provisions of the will, those in favor of the legatees as well as those in favor of the devisees, and if both can be made effectual without violating any of its provisions or disturbing the intention of the testator, it will be done.
Where real estate is charged with neither debts nor legacies, nor subject to any specific lien, but there is a general lien, and the estate descends to the heir, the assets will be marshalled in favor of legatees. If there be no devise of the real estate, but it descends, if the creditors exhaust the personal estate, there, as against the heir at law, the legatees may stand in the place of the creditors, and come upon the real estate which has descended: 2 Ross on Leg., 969; 1 Sto. Eq., 565 and note 5.
In the case of Aldrich v. Cooper, vol. 2, pt. 1, Leading Cases in Equity, p. 61-2, it is held that the *78 mere bounty of the testator enables the legatee to call for this species of marshalling: “ That if creditors, having a right to go upon the real estate descended, choose to go upon the personal estate, the choice of the creditors shall not determine whether the legatee shall be paid or not.”
In the notes upon this case, p. 65, Lord Hardwick is reported as saying in the case of Hamby v. Roberts, that “one rule of marshalling assets is clear; if there are no debts due by specialty; and legacies; and no devise of the real estate, . but it descends; if the creditors exhaust the personal estate, the legatees may stand in their place and come upon the real estate as against the heir at law.” Not so, however, if the real estate is devised; for the obvious reason, that in such case it is as much the intention of the testator that the devisee shall have the real estate as it' is that the legatee shall take the personal estate bequeathed to him.
“ Every will,” it is further said (p. 66), “ ought to be read, as in effect embodying a declaration by the testator that the payment of his debts shall be, as far as possible, so arranged as not to disappoint any of the gifts made by it, unless the instrument discloses a different intention.”
In this case no different intention is disclosed in the will; and it is peculiarly equitable that the legatees should be allowed to come upon the descended lands to satisfy the legacies to them, as the very property which was bequeathed to them was applied to pay the purchase price, in large measure, of the undevised lands.
*79 The lands descended must, therefore, be held chargable with the payment of the testator’s debts in exoneration of the personal property bequeathed in the will to his widow, with remainder to his grandchildren.
The personal property so bequeathed having been exhausted in payment of the debts, the legatees will be substituted to the rights of the creditors, to the extent of such payments made, by the sale of the personal property bequeathed; and the surplus, if any, arising from the land, will be distributed to those entitled thereto.
The Clerk of this Court will take an account thereof, and ascertain and report the amount of the personal estate thus appropriated, exclusive of money on hand, to the end that a decree may be entered here directing the sale of said lands to reimburse the sum so appropriated.
By the third clause of the will, the testator devises to his grandson, Joseph K. Miller, son of R. G. Miller, by metes and bounds, about 452 acres of the “home place,” upon condition that he shall not sell or mortgage the same until he attains thirty years of age. When he attains the age of thirty years, he is to take said lands absolutely, to him and his heirs forever. The will further provides that if said Joseph K. die without surviving issue, the land shall go to Jos. Miller, son of John M. Miller, deceased.
Joseph K. is living and has attained the age of thirty years, and it does not appear that he has violated the conditions of the will, restraining him from *80 selling, or attempting to sell or mortgage, the lands devised to him.
What arc his rights in the lands devised, and whether limited by the latter clause in the devise to him, as to his dying without issue, it is unnecessary now to determine. The contingency may or may not happen, and it is not material to the settlement of the questions in this case to discuss a question which may never become of practical consequence, in advance of the happening of the contingency upon which alone it will become necessary to decide it.
Holding, as we do, that the undevised real estate was the fund primarily liable for the debts, an account of advancements becomes unnecessary, as there will probably be no fund for distribution. If, however, the report hereinbefore ordered, and the result of the sale of the land, should disclose that there is any surplus for distribution, such account can be ordered hereafter.
By the fourth clause of his will, the testator gives, at the death of his wife, to his only surviving child, Nancy Jane Alexander, wife of James Alexander, all the balance of the “home tract” not devised to Jos. K. Miller, and also all the interest which he had purchased from the heirs of Woods S. Miller in the tract of land whereon the said James Alexander resided, for and during the joint and several lives of the said Nancy Jane and her husband James Alexander, with remainder over to his grandchildren then in being, and to the heirs and representatives of those grandchildren Avho may have died, etc.
*81 It will be observed that the devise is to Nancy J. alone “for and during the joint and several lives of said Nancy Jane and her husband, James Alexander.”
James Alexander having survived his wife, the question for our determination is, to whom does the unexpired term go ?
An estate to A during life and the lives of B and C, is cumulative, and will continue during the lives of all three: 1 Wash. R. marg. p. 90.
By the terms of the will, after the termination of the estate of Nancy Jane, which is to happen at the death of herself and her husband, the lands devised to her go to the testator’s grandchildren.
It is argued by the counsel for complainant that the estate goes to the surviving husband.
In 2 Kent, 134, it is said: “If the wife at the time of marriage hath an estate for her life, or for the life of another person, the husband becomes seized of such estate in right of his wife, and is entitled to the profits during marriage.
“On the death of the wife, the estate for her own life is gone, and the husband has no further interest in it. But if she have an estate for the life of another person who survives her, the husband becomes a special occupant of the land during the life of such other person.”
In Massachusetts and Yermont, by statutory provision, on the death of the tenant pur autre vie without having devised the same, the estate descends to his lawful representatives like estates in fee simple: 4 Kent, 27.
*82 This peculiar estate has often been called a de-scendible freehold, but it is not an estate of inheritance; and perhaps, strictly speaking, it is not a de-scendible freehold in England, for the heir does not take by descent. It is a freehold interest sub modo, or for certain purposes, though in other respects it partakes of the nature of personal estate: 4 Kent, 27.
Conceding that at common law an estate for life in lands is not an estate of inheritance, this common law rule has been altered and modified by statutory provision.
Sec. 51 of the Code declares that the word “land,” as used in the Code, signifies or includes not only “lands, tenements, and hereditaments,” but also “all rights thereto and interests therein.”
In speaking of real estate, the ordinary terms used are “lands, tenements, and hereditaments,” and such is the common definition of the term, and each of these terms has in turn its own signification: 1 Wash., R. P. marg. 10; but our statute enlarges the definition of the term by including all rights thereto and interests therein, equitable as well as legal.
Sec. 2420 provides that the “lands,” thus defined, “of an intestate owner shall be inherited,” etc.
A right to or interest in land is, in view of our law, precisely the same thing as land, and the course of descent of the one and the other is regulated by the same law. If a life estate, therefore, be an interest in or right to land, it descends as a fee simple estate does, and by the express terms of the statute is an estate of inheritance.
*83 We are therefore of opinion that under our statutes an estate in land for the life of another person is an estate of inheritance in such a sense as that it may be inherited by the heir, and that Mrs. Alexander took such an estate for the life of her husband, and that her husband takes said estate as tenant by the courtesy.
When a man marries a woman seized at any time during the coverture of an estate of inheritance, and hath issue by her, born alive, which might inherit the estate as heir to the wife, and the wife dies in the life time of the husband, the husband holds the estate during his life as tenant by the courtesy: 4 Kent, 27.
All the elements necessary to constitute such an estate in the husband are found in this case.
The estate being one which the law casts upon the heir of the mother, it is an estate of inheritance. And it is in virtue of this quality, that it may descend to the heir, that the husband’s right as tenant by the courtesy attaches. The other ingredients of that character of estate existing, this devolves it for the term of his life upon the husband.
If the estate was for the life of one other than the husband, and the husband should die, the unexpired term would descend to the heir.
The argument against the right of the husband is that the estate descends to the heirs. If so, it is necessarily an inheritable estate, and being an inheritable estate, it fulfills that essential quality of an estate of tenantcy by the courtesy.
*84 The decree of the Chancellor will be modified in the particulars indicated in this opinion, and the same will be affirmed so far as it declares the rights of the parties in relation to the slaves mentioned and bequeathed in the will, and will be reversed so far as it determines the rights of Joseph K. Miller in the lands devised to him, because we are of opinion that it is not necessary now to determine his rights.